IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DICK'S SPORTING GOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:16-cv-01635-DSC-RCM |
| v. | ) | |
| | ) | Judge David S. Cercone |
| PICC PROPERTY AND CASUALTY | ) | Magistrate Judge Robert C. Mitchell |
| COMPANY LIMITED SUZHOU | ) | |
| BRANCH, | ) | Docket No. 14 |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. Recommendation

Dick's Sporting Goods ("DSG") filed a breach-of-contract and declaratory-judgment action against PICC Property and Casualty Company Limited Suzhou Branch ("PICC").[1] This action seeks to impose upon PICC duties to defend and indemnify DSG in a pending action at the Court of Common Pleas of Philadelphia County ("Philadelphia County Court"). For the reasons set forth below, it is respectfully recommended that PICC's Rule 12(c) motion for judgment on the pleadings[2] (Docket No. 14) be granted and this case be dismissed and closed with the understanding that DSG may refile it in the appropriate Chinese court.

---

[1] DSG was "formerly known as Dick's Clothing and Sporting Goods, Inc." (Docket No. 16 at 1). PICC used DSG's former name to designate DSG as an additional insured. (Docket No. 9-1 at 3).

[2] While the pending motion is styled as a Rule 12(b)(6) motion to dismiss (Docket Nos. 13–14, 15 at 4), because PICC answered DSG's amended complaint (Docket No. 11) prior to filing this motion, it will be construed as a Rule 12(c) motion for judgment on the pleadings.

## II. Report

### A. Introduction

International commerce creates international consequences. One such consequence is litigating a garden-variety-insurance dispute on the other side of the world. DSG, a Delaware corporation with a principal place of business in Allegheny County, Pennsylvania, sued PICC, an insurance company organized under Chinese law with a principal place of business in China. (Docket No. 9 ¶¶ 1, 4). DSG accuses PICC of breaching an insurance contract "[b]y failing to defend and indemnify DSG" with respect to an underlying lawsuit. (Id. ¶ 32). DSG also seeks a declaration that PICC "has a duty to defend" and "a duty to indemnify" it in the underlying lawsuit. (Id. at 6). PICC moved to dismiss, contending that a valid forum-selection clause requires DSG to bring its lawsuit in China. (Docket Nos. 14 at 1; 15).

DSG responded with three arguments. First, it is not subject to the forum-selection clause because the insurance policy denotes it as an "additional insured" rather than "the insured" and the forum-selection clause explicitly applies only to "the insured" entity. (Docket No. 16 at 4–9). Second, the forum-selection clause is invalid and unenforceable against DSG because: it did not negotiate the clause's contents with PICC; it was not aware that PICC's policy had a forum-selection clause prior to this litigation; and PICC's conduct may have violated Pennsylvania statutes and regulations on unfair insurance practices. (Id. at 9–13). Third, even if the forum-selection clause is valid and enforceable, PICC waived it by not negotiating with DSG, which PICC was required to do in the policy paragraph containing the forum-selection clause. (Id. at 13–14).

PICC replied. It first noted that DSG could not argue that the policy's forum-selection clause does not apply to it while simultaneously contending that PICC should defend and indemnify it. (Docket No. 17 at 1–2). Second, as an "additional insured" under the policy, DSG

is a third-party beneficiary that must abide by all provisions in the insurance policy. (Id. at 2–4). Third, "friendly negotiations" need not occur for DSG to be subject to the policy's forum-selection clause. (Id. at 4–6).

After considering the parties' arguments and the applicable law, the Court should grant PICC's motion to dismiss (Docket No. 14) with the understanding that DSG may bring this suit in China.

### B. Factual Background

PICC issued an insurance policy (PZA1201232050000000291; the "policy") to Dalps & Leisure Products Supply Corporation ("Dalps"). (Docket Nos. 9 ¶ 9; 9-1 at 2). The policy listed DSG as an "[a]dditional insured" and was effective from November 1, 2012, through October 31, 2013. (Docket No. 9-1 at 2–3). The policy is titled "Products Liability Insurance." (Docket No. 15-1 at 4). It provides coverage in the United States for "bodily injury" caused by stability balls produced by Dalps. (Id. at 2).

On August 28, 2013, Donald Royce ("Royce") purchased a Fitness Gear stability ball produced by Dalps from a DSG retail location in Dickson City, Pennsylvania. (Docket No. 9-2 ¶¶ 7, 20). When Royce used the stability ball two days later, it failed, causing him to "violently strike his head on the basement floor and to lose consciousness." (Id. ¶ 8).

Royce and his wife sued DSG on August 28, 2014, in Philadelphia County Court. (Id. at 2). Royce brought negligence, strict liability, and breach of warranty claims; his wife brought a claim for loss of care, comfort, and consortium. (Id. at 6–14). Their claims stem from the injuries Royce received from the stability ball's failure. (Docket No. 9 ¶ 21).

In late February 2016, DSG requested that Dalps refer the underlying suit to Dalps's insurer. (Id. ¶ 22). About one week later, counsel for DSG learned that the underlying suit was referred to PICC. (Id. ¶ 23). PICC did not acknowledge that DSG tendered the underlying suit

3

to it prior to DSG initiating this action. (Id. ¶ 24). As a result, DSG defended itself in the underlying suit and incurred its costs. (Id. ¶ 25).

The policy's dispute paragraph contains a forum-selection clause. The paragraph states that

> [a]ll disputes under this insurance arising between the Insured and the Company shall be settled through friendly negotiations. Where the two parties fail to reach an agreement after negotiations, such dispute shall be submitted to arbitration or to court for legal actions. Unless otherwise agreed, such arbitration or legal action shall be carried out in the place where the defendant is domiciled.

(Docket No. 15-1 at 10).

### C. Standard of Review

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) will only be granted if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005) (citations omitted). Under this standard, the facts pleaded and the inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. Id. A district court may also consider "undisputably authentic documents attached to the motion for judgment on the pleadings if plaintiff['s] claims are based on the documents and matters of public record." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

A Rule 12(c) motion for judgment on the pleadings is treated the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 n.1 (3d Cir. 2004). The similar standard for evaluating Rule 12(c) and Rule 12(b)(6) motions is important because a valid forum-selection clause may

4

be enforced by moving for Rule 12(b)(6) dismissal. Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001). Wolfe v. TBG Ltd., No. 13-3315, 2014 WL 325637, at *2 (E.D. Pa. Jan. 28, 2014). Courts should assume the veracity of well-pled factual allegations. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### D. Discussion

#### 1. *Insurance Contract in its Entirety Applies to DSG*

The forum-selection clause applies to DSG because DSG is a third-party beneficiary of the insurance contract between Dalps and PICC. An individual "who makes a claim . . . under a policy to which he is not a signatory is . . . a third[-]party beneficiary." Johnson v. Pa. Nat'l Ins. Cos., 594 A.2d 296, 298 (Pa. 1991). A third-party beneficiary may recover "under the terms and conditions of the contract from which he makes a claim." Id. at 298–99. "[A]n additional insured[] is a 'third-party beneficiar[y] . . . bound by the same limitations in the contract as the signatories.'" Fire & Cas. Co. of Conn. v. Cook, 155 F. App'x 587, 591 n.7 (3d Cir. 2005) (quoting Gen. Accident Ins. Co. of Am. v. Parker, 665 A.2d 502, 504 (Pa. Super. Ct. 1995)).

Here, DSG did not sign the insurance contract between Dalps and PICC. (Docket No. 9-1 at 2). The contract instead lists DSG as an "[a]dditional [i]nsured." (Id. at 3). This means DSG is a third-party beneficiary as a matter of law. Cook, 155 F. App'x at 591 n.7; Parker, 665 A.2d at 504. Since DSG is a third-party beneficiary, all provisions of the insurance contract apply to it. Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983), cert. denied, 464 U.S. 938 (1983) ("The law of contracts . . . has long recognized that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise

5

enforceable."). It does not matter that DSG did not negotiate or know about the forum-selection clause. "'That there may not have been actual negotiations over [a forum selection] clause does not affect its validity.'" Park Inn Int'l, L.L.C. v. Mody Enters., 105 F. Supp. 2d 370, 375 (D.N.J. 2000) (citing Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991), cert. denied, 502 U.S. 908 (1991)).

DSG cites to Steinmetz v. McGraw-Hill Global Educ. Holdings for the proposition that a forum-selection clause agreed to by McGraw-Hill and a third party could not apply to a dispute between Steinmetz and McGraw-Hill because "Plaintiff and Defendants never agreed to do business together; Plaintiff may not even have been aware that the forum selection clause existed, let alone bargained for its terms." 220 F. Supp. 3d 596, 604 (E.D. Pa. 2016). The Steinmetz court held that the forum-selection clause did not apply because Steinmetz "was not a party to the pricing agreements between Defendants and a third-party licensing agency" and his "copyright infringement claim does not depend on the existence or terms of those agreements." Id. at 598. Steinmetz is distinguishable because the policy named DSG as an additional insured. (Docket No. 9-1 at 3). DSG is a third-party beneficiary due to its status as an additional-insured party and its claims against PICC depend on the policy's provisions. Cook, 155 F. App'x at 591 n.7; Parker, 665 A.2d at 504. Therefore, Steinmetz has no bearing on the conclusion that the forum-selection clause agreed to by Dalps and PICC applies to DSG.

As for DSG's final contractual argument, the plain language of the policy's dispute paragraph does not establish that "friendly negotiations" are a prerequisite for the forum-selection clause to apply. DSG's argument that PICC waived the forum-selection clause is thus inapposite. Precedent from the United States Court of Appeals for the Third Circuit

6

("Third Circuit") establishes the approach Pennsylvania district courts should take when reviewing insurance-contract provisions.

> It is the function of the court to interpret insurance contracts under Pennsylvania law. Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006) (citing 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 171 (Pa. 2005)). The court's primary consideration in performing this function is "'to ascertain the intent of the parties as manifested by the language of the written instrument.'" Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C., 32 F. Supp. 2d 219, 223 (E.D. Pa. 1998) (quoting Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). The policy must be read as a whole and construed in accordance with the plain meaning of terms. C.H. Heist Caribe Corp. v. Am. House Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981). Words of common usage must be "construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms." Melrose Hotel Co., 423 F. Supp. 2d at 495 (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa. 1999)).
>
> Where the language of an insurance policy is clear and unambiguous, a court must enforce that language. Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). "Furthermore, if possible, 'a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions.'" Id. (quoting Little v. MGIC Indem. Corp., 836 F.2d 789, 793 (3d Cir. 1987)). However, if the contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous. Id.; C.H. Heist Caribe Corp., 640 F.2d at 481. "'Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control.'" Med. Protective Co., 198 F.3d at 104 (quoting McMillan v. State Mut. Life Assurance Co., 922 F.2d 1073, 1075 (3d Cir. 1990)). Pennsylvania courts have applied this rule liberally. Id.

Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320–21 (3d Cir. 2011). The dispute paragraph provides that

> [a]ll disputes under this insurance arising between the Insured and the Company shall be settled through friendly negotiations. Where the two parties fail to reach an agreement after negotiations, such dispute shall be submitted to arbitration or to court for legal

7

> actions. Unless otherwise agreed, such arbitration or legal action
> shall be carried out in the place where the defendant is domiciled.

(Docket No. 15-1 at 10). The first two sentences of this paragraph indicate that negotiations should occur before beginning court proceedings or an arbitration. (Id.). However, this paragraph lacks language tying the attempt at "friendly negotiations" discussed in the first two sentences to the applicability of the forum-selection clause in the third sentence. (Id.). There is no requirement that "friendly negotiations" occur before the forum-selection clause may apply to the parties. (Id.) As a result, DSG may not avoid the forum-selection clause in the insurance contract's dispute paragraph.

### 2. *The Forum-Selection Clause is Valid*

In a diversity case, federal law determines a forum-selection clause's validity. Jumara v. State Farm Ins. Co., 55 F.3d 873, 877–78 (3d Cir. 1995) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988)). Interpreting and enforcing forum-selection clauses are pure issues of law. Salovaara, 246 F.3d at 295. Forum-selection clauses are presumed valid unless the resisting party shows the clause's enforcement to be unreasonable. The Bremen, 407 U.S. at 10; Foster, 933 F.2d at 1219. Enforcing a forum-selection clause is unreasonable if it: (1) was procured through fraud or overreaching; (2) "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision"; and (3) prescribes a forum that is "seriously inconvenient for the trial of the action." The Bremen, 407 U.S. at 15–16 (emphasis removed). The party trying to avoid the forum-selection clause receives the burden to show its unreasonableness. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 592 (1991).

DSG did not advance any evidence suggesting that the forum-selection clause was the product of fraud or overreaching. Instead, the forum-selection clause applies to DSG because

PICC and Dalps agreed to designate DSG as an additional insured, making DSG a third-party beneficiary of PICC's and Dalps's insurance contract. Cook, 155 F. App'x at 591 n.7 (citing Parker, 665 A.2d at 504); (Docket No. 9-1 at 3). It makes little sense to describe DSG's burden—the forum-selection clause—as the product of overreaching or fraud when DSG received the benefit of insurance coverage from PICC without contracting for it.

As for the forum's public-policy concerns, the Supreme Court of Pennsylvania presumes that forum-selection clauses are valid, enforcing them "when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." Central Contracting Co. v. C.E. Youngdahl & Co., 209 A.2d 810, 816 (Pa. 1965). A forum-selection clause is unreasonable if it "seriously impair[s] [a party's] ability to pursue his cause of action." Id. "Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that [the party] received under the contract consideration for these things." Id. Instead, "[i]f the agreed upon forum is available to [a party] and said forum can do substantial justice to the cause of action then [that party] should be bound by his agreement." Id.

Since DSG did not agree to the forum-selection clause in PICC's and Dalps's insurance contract, Central Contracting is not a sufficient statement of Pennsylvania's public-policy to cover this forum-selection clause issue. But Pennsylvania third-party-beneficiary law closes the circle. DSG, as a third-party beneficiary, may recover "under the terms and conditions of the contract from which [it] makes a claim." Johnson, 594 A.2d at 298–99. DSG is "'bound by the same limitations in the contract as the signatories,'" Cook, 155 F. App'x at 591 n.7 (quoting Parker, 665 A.2d at 504), with the forum-selection clause agreed to by PICC and Dalps being one such limitation. DSG did not show that a Chinese forum would be: (1) unavailable to it and

9

(2) unable to provide substantial justice in DSG's cause of action. Therefore, enforcing the forum-selection clause against DSG would not contravene a strong Pennsylvania public policy.

Third, DSG did not meet its burden of showing that the destination forum, China, is "seriously inconvenient for the trial of the action." The Bremen, 407 U.S. at 16 (emphasis removed). Beyond the obvious fact that China is on the other side of the globe from Western Pennsylvania, DSG did not demonstrate why litigation in China would be seriously inconvenient. The PICC-Dalps insurance contract designated Dick's Sporting Goods International Limited, a Hong Kong SAR Limited Liability Company, as an "[o]ther [i]nsured." (Docket No. 9-1 at 3). While no further information on the extent of DSG's Chinese business activities is before the Court, DSG has a Chinese corporate presence via a Hong Kong business entity. Thus, it is not "seriously inconvenient" for DSG to bring this action in China. The Bremen, 407 U.S. at 16 (emphasis removed).

DSG's contention that it would be unreasonable to enforce the forum-selection clause because DSG alleges PICC violated Pennsylvania insurance bad faith statutes and regulations falls flat. (Docket No. 16 at 11). DSG did not cite any authority for that proposition. Instead, it cited to two Pennsylvania statutes and one Pennsylvania Code provision and stated that PICC's actions "'are arguably within the scope of unlawful practices set forth in Pennsylvania's Unfair Insurance Practices Act and Unfair Claim Settlement Practices regulations.'" (Id.) (quoting Rosewood Cancer Care Inc. v. Travelers Indem. Co., No. 14-434, 2016 WL 5407731, at *18 n.13 (W.D. Pa. Sept. 28, 2016)). Rosewood does not apply to this case because it does not discuss the validity of a forum-selection clause. 2016 WL 5407731. Therefore, it would be improper to allow DSG to avoid the forum-selection clause on the basis of PICC's alleged unfair insurance practices.

Since DSG did not persuade the Court that the forum-selection clause must be discarded, a modified *forum non conveniens* analysis comes next. "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 134 S.Ct. 568, 579 (2013). To effectuate this pronouncement, the Atlantic Marine court made two holdings directly applicable to the analysis here. "First, the plaintiff's choice of forum merits no weight." Id. at 581. Second, district courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum" when the parties agree to a forum-selection clause. Id. at 582. "As a consequence, a district court may consider arguments about public-interest factors only."[3] Id. Before considering the public-interest factors, this Court must determine that China is an adequate alternative forum. Knopick v. UBS AG, 137 F. Supp. 3d 728, 736 (M.D. Pa. 2015) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981)).

The parties did not brief China's adequacy as a forum for their insurance dispute. It is DSG's burden to show that China would be an inadequate alternative forum. Knopick, 137 F. Supp. 3d at 736 (focusing on plaintiff's adequate-alternative-forum argument without describing defendant's argument). DSG did not delineate why China would not be an adequate alternative forum for its insurance dispute with PICC, a Chinese insurer. Thus, the Court will consider China an adequate alternative forum.

The Court next considers the public-interest factors. Atlantic Marine listed these factors in a footnote: "the administrative difficulties flowing from court congestion; the local interest in

---

[3] The factors described in these quotes are part of Section 1404(a)'s analysis for motions to transfer venue. 28 U.S.C. § 1404(a); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6. The Supreme Court referred to these factors in Piper Aircraft's *forum non conveniens* analysis. Piper Aircraft, 454 U.S. at 257–61. While PICC moves under Rule 12(c) for judgment on the pleadings, Atlantic Marine's analysis applies because PICC is using its Rule 12(c) motion to enforce a forum-selection clause.

having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." 134 S. Ct. 568, 581 n.6 (2013) (quoting Piper Aircraft, 454 U.S. at 241 n.6 (internal quotation marks omitted)). DSG "bears the burden" of showing that the forum-selection clause should not be enforced. Atl. Marine, 134 S. Ct. at 581 (referring to the burden to show that transferring a case is not warranted even though a forum-selection clause requires a transfer).

DSG did not meet its burden. Beginning with the court-congestion factor, the Court notes that it "is not a decisive factor; it must be weighed against all other relevant factors, and district courts within the Third Circuit have not placed great importance on this factor." York Grp., Inc. v. Pontone, No. 10-1078, 2014 WL 3735157, at *13 (W.D. Pa. July 28, 2014) (internal quotation marks omitted). DSG did not provide any information about court congestion in the United States District Court for the Western District of Pennsylvania ("Western District") or in the applicable Chinese court despite having the burden to do so. This factor will not favor DSG.

As for the second public-interest factor, while the Western District has an interest in deciding local controversies at home, DSG's insurance dispute with PICC, a Chinese insurer, centers around PICC's decision to not defend or indemnify DSG from a lawsuit in Philadelphia County Court. (Docket Nos. 9 ¶¶ 1, 4, 32; 9-2 at 2). DSG initiated this lawsuit in the Western District, but the presence of a Chinese insurer-defendant and the underlying lawsuit occurring in Philadelphia detracts from the characterization of this lawsuit as a local controversy. This factor weighs against DSG.

Finally, regarding the third public-interest factor, DSG did not describe the choice-of-law consequences that could occur if this litigation resumed in China instead of continuing in the Western District. It is hornbook law that "a federal court sitting in diversity appl[ies] the

substantive law of the forum [s]tate, absent a federal statutory or constitutional directive to the contrary." Salve Regina College v. Russell, 499 U.S. 225, 226 (1991) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Pennsylvania's substantive insurance and contract law would apply should this case continue here. While the Western District is intimately familiar with Pennsylvania substantive law, it is inappropriate to assume that a Chinese court would lack the ability to properly apply Pennsylvania substantive law, should that be necessary. If Chinese law applied, a Chinese court would have greater familiarity with it than this Court. The third public-interest factor does not favor DSG.

As it is DSG's burden to show that it would not be warranted to enforce the forum-selection clause, Atl. Marine, 134 S. Ct. at 581, and DSG did not make any arguments based on the public-interest factors as depicted in Atlantic Marine, DSG did not meet its burden to show that this case should not proceed in China as prescribed by the forum-selection clause.

### E. Conclusion

For the reasons set forth above, it is respectfully recommended that PICC's motion to dismiss, treated as a Rule 12(c) motion for judgment on the pleadings (Docket No. 14), be granted and this case be dismissed and closed with the understanding that DSG may refile it in the appropriate Chinese court.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed. R. Civ. P. 72(b)(2), the parties are allowed fourteen days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: 7/28/2017
/s/ Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc: All Counsel of Record